UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CR 24-47MSM

UNITED STATES OF AMERICA

v.

SEAN HITCHCOCK

Criminal Case No. _____

In violation of 18 U.S.C. § 1349

## INFORMATION

The United States Attorney charges that:

### COUNT 1
(Conspiracy to Commit Wire Fraud)

### Introduction

1. At all times relevant to this Information, Defendant SEAN HITCHCOCK ("HITCHCOCK") was a salesperson for Company #1, marketed Company #1's call-routing products to prospective customers, managed customer accounts, and reported to and took direction from Principal #1 and Principal #2, owners of Company #1.

2. At all times relevant to this Information, "Tech Support Fraud," which is also known as "Tech Support," "Tech," and "TS," was a multi-tiered form of telemarketing fraud in which (1) publishers posted online advertisements that misled victims to believe that viruses had been detected on the victims' computers and that urged the victims to telephone a specified number for assistance, (2) victim telephone calls generated by these misleading ads were sold and routed directly to call centers or to intermediary call brokers through whom the calls were ultimately sold and routed to call centers, and (3) call center operators received the victims' calls and offered the

victims putative technical support in exchange for payment.

3.  At all times relevant to the Information, Company #1 was a provider of call routing and tracking services that enabled the sale and routing of calls from victims of Tech Support Fraud to call brokers and to call centers, including calls from Tech Support Fraud victims generated by publishers engaged in Tech Support Fraud.

## The Conspiracy

4.  Beginning on a date unknown, but at least as early as in or about August of 2017, and continuing until in or about October 2021, in the District of Rhode Island and elsewhere, Defendant HITCHCOCK together with Principal #1, Principal #2, Company #1, and others known and unknown to the United States Attorney, knowingly, willfully, and unlawfully combined, conspired, and agreed together and with each other to commit wire fraud, by knowingly devising, executing, and attempting to execute a scheme and artifice to defraud individual computer users and to obtain money, funds, assets, and property by means of false and fraudulent pretenses, representations, and promises, through the use of interstate and international wire transmissions, contrary to 18 U.S.C. § 1343.

## Object of the Conspiracy

5.  The object of the conspiracy was to aid and assist individuals engaged in Tech Support Fraud to continue perpetrating that fraud on individual computer users, thereby increasing the fraud proceeds earned by those actively deceiving individuals into believing that technical support was needed on their computers and increasing the

revenue and profits earned by Company #1, Principal #1, Principal #2, Defendant HITCHCOCK, and other employees of Company #1.

## Manner and Means of the Conspiracy

6. It was part of the conspiracy that Principal #1, Principal # 2, Defendant HITCHCOCK and other known co-conspirators permitted Company #1's clients whom they knew to be engaged in Tech Support Fraud to make use of Company #1's call routing services in furtherance of the clients' execution of Tech Support Fraud.

7. It was part of the conspiracy that individuals and companies engaged in Tech Support Fraud caused "popups" to appear on individuals' computers falsely indicating that a virus or malware had infected their computers and/or caused individuals to be directed to landing pages and/or websites that falsely indicated that a virus or malware had infected their computers. The popups, landing pages, and/or websites further provided a telephone number the individual should immediately call to remove the virus or malware. One popup commonly used was referred to as the "Blue Screen of Death" ("BSOD"), which caused the individual user's computer to be inoperable without outside assistance.

8. It was further part of the conspiracy that individuals would call the telephone number provided in the fraudulent popup that appeared on their computer. The individuals would typically reach an individual working in a call center abroad, who would attempt to convince them to spend hundreds of dollars, and sometimes more, to remove the virus from their computers and/or to provide other forms of

technical support including anti-virus software.

9. It was part of the conspiracy that Defendant HITCHCOCK, Principal #1 and Principal #2 directly solicited individuals and entities they knew to be engaged in Tech Support Fraud to be customers of Company #1. Defendant HITCHCOCK, Principal #1 and Principal #2 engaged in various activities to solicit the business of known Tech Support fraudsters, including soliciting the Tech Support fraudsters through social media platforms and chat groups on which those fraudsters communicated with one another and directly contacting Tech Support fraudsters in an attempt to convince them to utilize the call routing services of Company #1.

10. It was further part of the conspiracy that Defendant HITCHCOCK directed those engaged in Tech Support Fraud to post telephone numbers on their Tech Support Fraud advertising pages in a manner that did not reveal that those telephone calls were being directed through Company #1.

11. It was further part of the conspiracy that in order to minimize the instances of complaints by victims of Tech Support Fraud that could be associated with Company #1 and/or Company #1's clients who were engaged in Tech Support Fraud and in order to mitigate the risk of telephone numbers being removed by carriers, Defendant HITCHCOCK, Principal #1, and Principal #2 directed clients engaged in Tech Support Fraud to rotate telephone numbers frequently and to use a large pool of telephone numbers that Defendant HITCHCOCK and his co-conspirators provided Company #1's clients who were engaged in Tech Support Fraud.

12. It was further part of the conspiracy that telephone carriers would regularly notify Company #1 that complaints had been filed accusing Company #1's clients of engaging in fraud and/or Tech Support Fraud. In response to these complaints, Principal #1 and others would regularly inform the telephone carriers that a particular telephone number had been removed, fraudulently causing the telephone carriers to believe that Company #1 had addressed the fraudulent activity that had taken place on its platform. In reality, Principal #1, Principal #2, and others permitted the Tech Support fraudsters to continuing committing fraud on Company #1's platform by using other telephone numbers provided by Company #1.

13. It was a further part of the conspiracy that when telephone carriers communicated that too many complaints were being filed alleging fraud and/or Tech Support Fraud by Company #1's clients, Principal #1, Principal #2, Defendant HITCHOCK and other coconspirators would switch known Tech Support fraudsters to another telephone carrier which was either unaware of the fraudulent practices or more willing to tolerate them.

14. It was further part of the conspiracy that Principal #1, Principal #2, and Defendant HITCHOCK would sometimes cease the provision of call routing services by Company #1 for clients whose Tech Support Fraud activities generated numerous complaints from victims. However, Principal #1, Principal #2, and Defendant HITCHOCK would maintain provision of call routing services by Company #1 for clients who were engaged in Tech Support Fraud while not generating numerous complaints from victims or who generated significant revenue for Company #1.

All in violation of 18 U.S.C. § 1349.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorney,

ZACHARY A. CUNHA
United States Attorney

_____
Julianne Klein
Milind Shah
Lee H. Vilker
Assistant U.S. Attorneys
U.S. Attorney's Office
One Financial Plaza, 17th Floor
Providence, RI 02903
Tel (401) 709-5039
Fax (401) 709-5001
milind.shah@usdoj.gov
